IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY *et al.* | ) ) ) | |
| v. | ) ) | Case No. 3:21-cv-00194 |
| JINGBIN DOUGLAS *et al.* | ) | |
| JINGBIN DOUGLAS | ) ) | |
| v. | ) ) | |
| JEROME EDWARD DOUGLAS II and DANIEL DOUGLAS | ) ) | |

**TO:    Honorable Eli J. Richardson, United States District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered November 9, 2023 (Docket No. 138), the District Judge referred the motion for summary judgment filed by Jingbin Douglas (Docket No. 130) in this interpleader action to the undersigned for a report and recommendation. Neither Jerome Edward ("Jed") Douglas II nor Daniel Douglas filed a timely response.[1] For the reasons set out below, the undersigned respectfully recommends that the motion be granted, that judgment be entered and interpled funds distributed as recommended below, and that all other claims asserted in this case be dismissed.

---

[1]As discussed below, Penny Grace Judd and Jingbin Douglas settled their claims against each other. (Docket No. 113.)

## I. BACKGROUND AND PROCEDURAL HISTORY[2]

The dispute between the individuals in this action brings to mind another contest, if not in duration, at least in intensity; namely that of the litigants in *Jarndyce and Jarndyce*, as depicted in Dicken's *Bleak House*.[3] And unfortunately, it appears this dispute too has taken a toll not unlike that which befell the Jarndyces. This is a fight among the widow of Jerome Edward Douglas, Sr. ("Jerry"), his brother, and his two adult children over the proceeds of four ERISA benefit plans held by Jerry upon his passing. (Docket No. 1.)[4]

Transamerica Life Insurance Company and Transamerica Corporation ("Transamerica") filed this action on March 5, 2021 to determine the proper beneficiaries of the proceeds. Transamerica originally named the following potential beneficiaries of Jerry's benefits: Jingbin Douglas, who identifies herself as Jerry's wife (and, as discussed below, was found by the Davidson County Seventh Circuit court, which is the probate court for Davidson County[5], to be Jerry's lawful spouse); Jerome Edward Douglas, II ("Jed"), Jerry's adult son; Penny Grace Judd,

---

[2] This case has a long and tortured history, some of which is recited in the Court's Memorandum Opinion of March 27, 2023. (Docket No. 122 at 1-6.) Only those underlying facts and procedural background necessary to give context to or for explanation of this report and recommendation are again recited.

[3] Charles Dickens, *Bleak House* (1853).

[4] This Court's original jurisdiction in this case is a matter of federal question jurisdiction under 28 U.S.C. § 1331, as Transamerica filed this case to resolve a dispute arising under federal law, namely the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq*. There is no dispute that the benefit plans at issue are ERISA plans and the Court has already determined that it has subject matter jurisdiction. *See* March 27, 2023 Memorandum Opinion (Docket No. 122) at n.6.

[5] The Davidson County Seventh Circuit Court, which has exclusive jurisdiction in Davidson County, Tennessee for all matters related to the administration of a deceased person's estate, including the probating of wills, is referred to interchangeably herein as the "Seventh Circuit Court," the "Probate Court," or the "Seventh Circuit Probate Court."

2

Jerry's adult daughter; and Daniel Douglas, Jerry's brother.[6] Jed asserted four crossclaims against Jingbin, and Jingbin asserted three crossclaims against Jed. (Docket No. 122 at 1.)[7] By memorandum opinion and order entered on March 27, 2023 (Docket Nos. 122 and 123), the Court dismissed Jed's declaratory judgment crossclaims (*see* Docket No. 19, Crossclaim ¶ 54(a), (b), (e)) as to the portions that sought to invalidate a Chinese divorce decree between Jingbin and her first husband, Hongwei Tang, and the Tennessee certificate of marriage of Jingbin and Jerry Douglas based on a lack of subject-matter jurisdiction and the domestic relations exception. (Docket No. 123 at 1.) The Court, also based on a lack of subject matter-jurisdiction and pursuant to the domestic relations exception, *sua sponte* dismissed the portion of Jingbin's declaratory judgment claim that sought to enforce the Chinese divorce decree and the Tennessee marriage certificate (*see* Doc. No. 65, Crossclaim at p.16, subsection (b)). (*Id.*)[8]

---

[6] Several parties in this case share the surname "Douglas," so the Court may refer to the potential beneficiaries by their first names for clarity. And the Court will refer to proceeds from the four benefit plans at issue in this case, collectively, as "Jerry's benefits."

[7] Penny and Jingbin also filed crossclaims against each other, but they later settled those claims. (Docket No. 113.)

[8] To be clear, in dismissing these claims, the Court expressly emphasized that:

> because the domestic relations exception does not apply to the bulk of the pending claims in this case, the effect of this ruling is limited. The Court simply holds that it lacks subject matter jurisdiction to issue a declaratory judgment that would invalidate or enforce the Chinese divorce decree and the Tennessee marriage certificate. But for the purpose of deciding the remaining pending claims at other stages of the case – including determining the proper beneficiaries of Jerry's benefits – the Court is not precluded from considering argument on the validity of Jingbin and Jerry's marriage, as well as any related evidentiary questions that may arise in the course of considering such argument. These matters may still be addressed by the Court in the context of resolving claims that do not seek performance of functions reserved for state courts under the domestic relations exception.

(Docket No. 122 at 15.)

Jingbin and Jed and Penny previously filed cross motions for summary judgment. (Docket Nos. 96 and 100.) While those motions were pending, Penny retained new counsel and settled with Jingbin. (Docket Nos. 111, 113, 114, and 115.)[9] Jed's attorneys then moved to withdraw. (Docket No. 117.) The Court granted the motion to withdraw by order entered on March 28, 2023. (Docket No. 124.) In its March 28 Order, the Court allowed Jed until April 28, 2023 to retain new counsel and directed that if new counsel had not entered an appearance by that date, Jed would be deemed to be proceeding *pro se*. (*Id*. at 2.)[10]

The March 28 Order further terminated the pending motions for summary judgment without prejudice to refiling by either (i) 14 days from a notice of appearance by new counsel on behalf of Jed or (ii) 14 days from the April 28 date on which Jed would be deemed to be representing himself in the absence of an appearance by counsel. (*Id*.) The March 28 Order further provided that, under the second option – that is, Jed proceeding *pro se* – any new or amended summary judgment motions would completely replace the prior motions and briefing would proceed according to Local Rule 56.01. (*Id*. at 3.) Additionally, the March 28 Order expressly cautioned Jed that, as a *pro se* litigant, he would be required to "follow the same rules of procedure that govern other litigants." (*Id*.) (citing *August v. Caruso*, 2015 WL 1299888, at *6 (E.D. Mich.

---

[9] Penny and Jed had previously been represented by the same law firm.

[10] Daniel has proceeded in this case as an unrepresented litigant. On or about October 13, 2021, the Court received an answer to the amended interpleader complaint in which Daniel stated that "any decisions that [Jerry] made should be respected and upheld." (Docket No. 22 at 1.)

Mar. 23, 2015) and *Greer v. Home Realty Co. of Memphis Inc.*, 2010 WL 6512339, at *2 (W.D. Tenn. July 12, 2010)).[11] A copy of the March 28 Order was mailed to Jed and to Daniel.[12]

No attorney entered an appearance on behalf of Jed by the April 28 deadline. On May 4, 2023, Jingbin filed a timely new motion for summary judgment (Docket No. 130), which is the instant motion pending before the Court, with an accompanying statement of undisputed material facts (Docket No. 131), a supporting memorandum of law (Docket No. 132), and evidentiary exhibits (Docket No. 134.) According to certificates of service, Jingbin's filings were all mailed and emailed to Jed and to Daniel. (Docket Nos. 130 at 2; 131 at 7; 132 at 22; and 133 at 3.)[13]

In support of the instant motion for summary judgment, Jingbin asserts the following undisputed material facts (with supporting citation to the record as parentheses):[14]

---

[11] Although the cautionary admonition was not expressly extended to Daniel, it is equally applicable to him as a *pro se* litigant as well. The Court has no reason to believe that Daniel could not discern that he, too, would be obligated to follow the rules. However, throughout much of the pendency of this case, Daniel has proceeded under his original answer that Jerry's decisions should be respected and upheld (*see* n.8), which the Court reasonably construes as a lack of contest to the claims made by Jingbin.

[12] The March 28 Order also directed that a copy also be sent by email to Jed, but it is not clear from the docket whether a copy was emailed. Nevertheless, there is no indication that either Jed or Daniel failed to receive the March 28 Order. Correspondence sent by Jed directly to the District Judge included the same return address to which the March 28 Order was sent. *See* Docket No. 135 at 12.

[13] The certificate of service of notice of filing of the supporting exhibits does not clearly state that all the filed exhibits were sent to Jed and Daniel with the notice. However, nothing on the docket indicates any request by either party for copies of the exhibits.

[14] Jingbin's filing (Docket No. 131) includes additional statements, some of which are arguments or legal conclusions. Only those facts that are material to the determination of the motion for summary judgment are recited here. Further, the Court has reviewed the evidence submitted by Jingbin in support of the stated material facts and recites only to the evidence the Court finds as supporting. Regardless, however, the Court notes, as discussed in more detail below, that because no response to Jingbin's statement of undisputed material facts was timely filed, the facts are treated by the Court as undisputed by operation of Local Rule 56.01(f), which provides that "[i]f a timely response to a moving party's statement of materials facts, or a non-moving

5

- Jingbin is a designated beneficiary of each of Jerry's Transamerica employment benefit plans, as evidenced by Transamerica's First Amended Complaint (Docket No. 16 at ¶¶ 13, 22, and 23) and Jed does not dispute that Transamerica's records reflect the beneficiary designations claimed by Jingbin, as evidenced by his answer to Transamerica's First Amended Complaint (Docket No. 19 at ¶¶ 13, 22, and 23).

- The Transamerica policy definition of "beneficiary" includes any "person(s) named at the time the Eligible Employee enrolls in the plan or as later changed by the Eligible Employee" (Docket No. 16-3 at 13, Page ID#550) without limitation on who may be named as a beneficiary by an Eligible Employee (*id.*).[15]

- Jingbin Douglas and Jerry Douglas were legally married at the time of Jerry's death on September 6, 2020.[16] (Divorce decree issued by People's Republic of China, Docket No. 133-1; Jingbin Douglas Deposition, Docket No. 133-21; Jed Douglas Deposition (at p. 95), Docket No. 133-25 at 6; Certificate of Marriage, Docket No. 133-4; Application for and Notice of Approved Application for Permanent Residence in the United States, Docket No. 133-5 and 133-6; Order of Davidson County Seventh Circuit

party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment."

[15] Jingbin asserts as an undisputed material fact that her marital status at the time of Jerry's death is irrelevant regarding her entitlement to life insurance benefits based on this plan definition of "beneficiary". (Docket No. 131 at ¶ 2.) That is not, however, a statement of fact, but an asserted legal conclusion.

[16] This is also, arguably, an asserted legal conclusion or at least both a statement of fact and legal conclusion. Nevertheless, for purposes of this proceeding, and based on the determination by the Davidson County Seventh Circuit Probate Court, the Court accepts this as a statement of fact.

[Probate] Court Granting Summary Judgment (at pp. 7-9 and 13), Docket No. 133-12 at 9-11 and 15).

- Jerry Douglas designated his basic life insurance beneficiaries as: Jed 10%, Penny 10%, Jingbin 80%; Jerry Douglas designated his supplemental life insurance beneficiaries as: Jed 5%, Penny 5%, Daniel 5%, Jingbin 85%. (Transamerica's First Amended Complaint in Interpleader, Doc. No. 16 at ¶¶ 22 and 23; admitted by Jed in his Answer, Doc. No. 19 at ¶¶ 22 and 23; and, Designation of Benefits produced through discovery from Transamerica to Jed via subpoena and authenticated by affidavit of a records custodian, Docket No. 133-9 and Docket No. 133-26[17].)

- Jingbin Douglas did not undertake changes to Jerry's designated beneficiaries. (Jingbin Douglas deposition, Docket No. 133-21 at p. 33, 35-36, 149, 300).

- Jerry Douglas last changed his beneficiary designations regarding his Transamerica benefits on November 15, 2019. (Transamerica Amended Complaint, Docket No. 16 at ¶ 21).

- Jerry Douglas was competent when he made his final beneficiary changes. (Jingbin Douglas deposition (at pp. 298-300), Docket No. 133-21 at 31-33; Docket No. 99-45, manually filed recording of Jerry Douglas of November 15, 2019 made by Transamerica; Daniel Douglas deposition (at p. 97), Docket No. 133-23 at 24; Jed Douglas deposition (at p. 131), Docket No. 133-25 at 9; Order of Davidson County

---

[17] The declaration of the records custodian was detached from the accompanying documents referenced in the declaration. Nevertheless, because no timely response was made in opposition to Jingbin's statement of undisputed facts, the Court accepts the statement as undisputed. *See* Local Rule 56.01(f).

Seventh Circuit [Probate] Court Granting Summary Judgment (at pp. 7, 11, 13), Docket No. 133-12 at 9, 13, and 15).

- Jingbin Douglas did not sign a Spousal Consent form to designate any beneficiary other than Jerry Douglas' spouse regarding the proceeds of the 401(k) plan. (Jingbin Douglas deposition (at p. 292), Docket No. 133-21 at 28).

- Under the provisions of Jerry's Transamerica 401(k) plan, a designation of beneficiary other than a spouse required Jerry's spouse to complete a "Spousal Consent" form consenting to the employee's choice of a different primary beneficiary. (Docket No. 16-2 at 29)

Despite the plain instruction in the Court's March 28 Order for briefing of the motion for summary judgment in accordance with Local Rule 56.01, neither Jed nor Daniel filed a response to Jingbin's timely motion for summary judgment. Sometime in March of 2023, Jed sent a lengthy letter directly to the District Judge, which, among other things, requested a criminal investigation of various private actors and included other statements about the supposed facts of this case, but did not specifically address Jingbin's motion for summary judgment. (Docket Nos. 134 and 135.)

Concurrent with the filing of a motion for summary judgment, Jingbin also moved to strike a portion of her crossclaims against Jed, Penny, and Daniel. (Docket No. 128.) Specifically, Jingbin sought to strike the claim that none of those other beneficiaries are entitled to Jerry's basic and supplemental life insurance benefits and to allow for the distribution of those benefits in the percentages designed by Jerry. (*Id*. at 1.) The Court granted Jingbin's motion by order entered on May 15, 2023, and struck subpart (h) of Jingbin's crossclaim (Docket No. 65 at 17) in which it

was pled that Jed, Penny, and Daniel are not eligible beneficiaries of Jerry's basic and supplemental life insurance benefits. (Docket No. 136.)[18]

The trial in this case, which was previously set for January 17, 2023 (Docket No. 30), was canceled pending resolution of any timely filed motions for summary judgment and has not been reset.

## II. LEGAL STANDARDS AND ANALYSIS

### A. Interpleader

Interpleader is an equitable proceeding that provides a party facing the prospect of defending multiple claims to a limited fund under its control with a mechanism to settle the controversy and satisfy its obligation in a single proceeding. *U.S. v. High Tech. Prods., Inc.*, 497 F.3d 637, 641–42 (6th Cir. 2007). Interpleader may be invoked in the federal courts via Rule 22 of the Federal Rules of Civil Procedure[19] or via the Interpleader Act, 28 U.S.C. § 1335.

Here, Transamerica invoked Rule 22 to bring this interpleader action.[20] The Sixth Circuit has commented on the progression of an action under Rule 22 as follows:

---

[18] This effectively results in an award to Douglas, Jed, and Penny of the life insurance benefits as recommended below.

[19] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

[20] Rule 22 provides in pertinent part that:

(a)(1) Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:

    (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or

    (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

Fed. R. Civ. P. 22.

> An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent use of interpleader. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial.

*United States v. High Techn. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (internal citations omitted). In determining the propriety of an interpleader action, a court must ascertain whether the stakeholder has a legitimate fear of multiple liability seeking a single stake. *Id.* at 642. Interpleader is also appropriate where the claims against the stake are adverse to each other. *See* 4 James Wm. Moore, Moore's Federal Practice § 22.03[1][d] (3d ed. 2016). The advantages of an interpleader action are tantamount to a declaratory judgment action as both actions enable a "defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience." *Bell & Beckwith v. United States, I.R.S.*, 766 F.2d 910, 914 (6th Cir. 1985) (internal quotation marks and citation omitted). The Court previously found that Transamerica properly utilized Rule 22 in seeking interpleader and declaratory relief, based on the competing and adverse claims of multiple parties to Jerry's benefits. *See* Order of March 29, 2022 at Docket No. 63.

There is no requirement under Rule 22 that the party filing an interpleader action perform any kind of investigation into the claims. *Jackson Nat. Life Ins. Co. v. Poole*, Civil No. 3:14-CV-1924, 2015 WL 276632, *4 (M.D. Tenn. Jan. 22, 2015) (Trauger, J.).[21] It is "precisely the purpose of an interpleader action to remove the holder of the proceeds from the equation and allow a neutral third party to make determinations as to who is actually entitled to payment." *Id.* There is no merit to Jed's argument, such as it is, that Transamerica was somehow in the wrong when it viewed all

---

[21] The *Poole* case referred to a lack of any investigative requirement under 28 U.S.C. § 1335. However, the Court finds the reasoning equally applicable to Rule 22 interpleader actions.

the claims for the proceeds as legitimate competing claims and filed this lawsuit. *See* Docket No. 135 at 2 ("[Transamerica] is ultimately the one[] getting away with the responsibility of all of this …"). In fact, the plain language of Rule 22 expressly permits an interpleader action in these circumstances.

As previously held by the Court, Transamerica properly commenced this interpleader action in the face of the multiple claims against the proceeds of Jerry's benefit plans. Subject matter jurisdiction is supplied by ERISA. Against this backdrop, the Court considers the relief requested in the instant motion for summary judgment.

**B.  Motion for Summary Judgment**

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A genuine issue of material fact is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50. Once the moving party has presented evidence sufficient to support a motion for summary judgment, the non-moving party must present significant probative evidence to support its position. *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). In considering whether summary judgment is appropriate, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). The Court must view the evidence and all inferences

drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896 (2001).

Here, Jingbin requests that judgment be entered: (i) awarding her Jerry's pension plan benefits in the amount of $17,900.33 and 401(k) retirement savings benefits in the amount of $11,292.21; (ii) distributing Jerry's basic life insurance benefits according to his last designations in the amount of $5,900 each to Jed and Penny and $47,200 to Jingbin; and, (iii) distributing Jerry's supplemental life insurance benefits in the amount of $11,700 each to Jed, Penny, and Daniel and $198,900 to Jingbin, in accordance with Jerry's beneficiary designations. (Docket No. 132 at 21-22.)[22] She further requests that Jed's tort claims be dismissed. (*Id.*)[23]

Neither Jed nor Daniel[24] filed a proper response to Jingbin's timely motion for summary judgment, despite the clear instruction in the Court's March 28 order that the motion would completely replace the previously filed motion and "would necessitate fresh briefing … with the schedule for that briefing to follow this district's local rules in the normal course." (Docket No. 124 at 3.)[25] As noted above, sometime in March of 2023, Jed sent a lengthy letter directly to the

---

[22] See discussion below regarding amounts of interpled funds.

[23] Presumably, this refers to Jed's claims abuse of process (Docket No. 19 at 11-12) and intentional infliction of emotional distress (*id.* at 12). Jed also sought partition of three real estate properties. (Id. at 11.) As discussed further herein, the issues regarding the real estate were decided by the Davidson County Seventh Circuit Probate Court. Further, the undersigned respectfully recommends that Jed's partition claim be dismissed for failure to prosecute.

[24] The statement in Daniel's answer to the amended interpleader complaint that "any decisions that [Jerry] made should be respected and upheld" (Docket No. 22 at 1) is reasonably construed as no opposition to the arguments made by Jingbin that her position is supported by Jerry's actions prior to his death. The Court therefore focuses its attention to whether summary judgment against Jed is warranted, based on the instant motion and supporting documents.

[25] Local Rule 56.01(a) provides that responses to motions for summary judgment must be filed within 21 days of service of the motion. Optional replies may be filed within 14 days of filing

District Judge, which, among other things, includes Jed's unsworn statements about the supposed facts of this case. (Docket Nos. 135.)[26] The letter does not, however, address the substance of the motion for summary judgment or even mention the pendency of the motion.

When a motion for summary judgment is properly supported under Rule 56, such as Jingbin's motion, the non-moving party, in this instance Jed, may not merely rest on the allegations in the litigation but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact that requires that the action proceed to trial. *See Celotex Corp.*, 477 U.S. at 323-24; *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

Jed's *pro se* status does not relieve him of this obligation, which is a threshold requirement for all non-moving parties when summary judgment is sought by an opposing party. *Sixty Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court cannot supply or assume facts supporting Jed's case and is not required to make legal arguments on his behalf. *See Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215, 2000 WL 302998 (6th Cir. 2000); *Bell v. Tennessee*, 2012 WL 996560, *9 (E.D. Tenn. March 22, 2012). *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992) ("it seems to us utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion.").

---

of the response.

[26] Appended to the letter is a certified copy of Jed's unsworn Petition Contesting Probate of Will, Quit Claims/Fraud Conveyance, Executorship, Marriage/Bigamy, which was filed in the Seventh Circuit [Probate] Court for Davidson County, Tennessee on or about November 25, 2022. (Docket No. 135 at 4-12.)

Nor can the Court accept an unsworn letter as evidence of any facts asserted by Jed, even if the Court were to afford Jed's letter the most generous construction that it was submitted in response to Jingbin's motion for summary judgment. Jed is not entitled to a trial on his claims against Jingbin and his opposition to her claims merely on the basis of allegations of his cross-complaint. (Docket No. 19.) He must buttress the allegations of his cross-complaint with evidence supporting his claims. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). He has not done so.

In sum, neither Jed nor Daniel have set forth any admissible evidence rebutting Jingbin's contentions that: (i) she is entitled to Jerry's pension plan death benefits as his legal spouse; (ii) she is entitled to Jerry's 401(k) plan death benefits as his legal spouse; and, (iii) Jerry competently made beneficiary changes on November 15, 2019 for distribution of his basic life insurance and supplemental life insurance benefits in the beneficiary amounts described. Further, Jed has failed to set forth any admissible evidence to rebut Jingbin's request for summary judgment dismissing his cross-claims. Because neither Jed nor Daniel filed a timely response to Jingbin's statement of undisputed material facts (Docket No. 131), as required by Local Rule 56.01(c), the facts are deemed as undisputed for purposes of summary judgment, and the Court is therefore permitted to rely upon the facts set forth by Jingbin as the undisputed facts. Accordingly, the Court concludes that Jingbin Douglas is entitled to summary judgment, based on the following facts and legal authority.

### 1. **Pension Plan benefits**

At the time of his death, Jerry had a death benefit under the Transamerica Pension Plan valued in the amount of $17,551.63.[27] Section 6.2 of the Transamerica Pension Plan includes an order of payment of the death benefit and provides that the death benefit of a plan participant shall be paid to his Spouse, if the participant has a spouse at the time of death. Transamerica Pension Plan (at pp. 20-22), Docket No. 16 at 26-28. The plan defines Spouse as "the person to whom the participant is legally married." *Id*. (p. 11) at 17. Jingbin Douglas was legally married to Jerry Douglas at the time of his death.

The Court can deem Jingbin's statement that she married Jerry Douglas as undisputed simply because Jed failed to timely respond to the statement of undisputed material facts. *See* Local Rule 56.01(f). However, the Court also finds the additional evidence submitted by Jingbin supports the statement as undisputed. The undisputed evidence supporting the finding of a valid marriage between Jingbin Douglas and Jerry Douglas includes: divorce decree issued by People's Republic of China, Docket No. 133-1; Jingbin Douglas Deposition, Docket No. 133-21; Jed Douglas Deposition (at p. 95), Docket No. 133-25 at 6; Certificate of Marriage, Docket No. 133-4; and, Application for and Notice of Approved Application for Permanent Residence in the United States, Docket No. 133-5 and 133-6.

Further, the Davidson County Seventh Circuit Court, which has exclusive jurisdiction in Davidson County, Tennessee for all matters related to the administration of a deceased person's

---

[27] The stated value amounts of all the subject benefits are the valuations as of the date of Transamerica's Amended Complaint, filed on August 11, 2021. (Docket No. 16.) Per the Clerk's receipt of interpled funds, docketed on December 2, 2021 (Docket No. 40) and January 11, 2022 (Docket No. 47), the amounts interpled pursuant to the Court's order of October 22, 2021 (Docket No. 23) are as follows: pension plan benefits of $17,900.33 (Docket No. 40); 401(k) benefits of $11,292.21 (Docket No. 47); basic life insurance benefits of $59,000 and supplemental life insurance benefits of $234,000 (Docket No. 40).

estate, including the probating of wills, in a contest over Jerry Douglas' will, expressly found that

Jingbin Douglas was validly married to Jerry Douglas at the time of his death. *See* Order of

Davidson County Seventh Circuit [Probate] Court Granting Summary Judgment (at pp. 7-9 and

13), Docket No. 133-12 at 9-11 and 15. Application of the doctrine of collateral estoppel compels

this Court to give preclusive effect to this determination.

> This Court has described collateral estoppel as follows:

> [c]ollateral estoppel precludes relitigation of issues of fact or law actually litigated
> and decided in a prior action and necessary to the judgment. *Funk-Vaughn v.
> Rutherford Cty., Tennessee*, No. 3:18-cv-01311, 2019 WL 4727642, at *3 (M.D.
> Tenn. Sept. 27, 2019). Under federal common law, four requirements must be met
> before issue preclusion applies: (1) the precise issue must have been raised and
> actually litigated in the prior proceedings; (2) the determination of the issue must
> have been necessary to the outcome of the prior proceedings; (3) the prior
> proceedings must have resulted in a final judgment on the merits; and (4) the party
> against whom estoppel is sought must have had a full and fair opportunity to litigate
> the issue in the prior proceeding. *Id.* (quoting *Ga.-Pac. Consumer Prods. LP v.
> Four-U- Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012)).

*Southall v. USF Holland, LLC*, No. 3:19-CV-01033, 2021 WL 396688, at *4 (M.D. Tenn. Feb. 3,

2021), *aff'd,* No. 21-5265, 2022 WL 221641 (6th Cir. Jan. 26, 2022). All the necessary elements

of collateral estoppel are met here.

The "precise issue" of the validity of the purported marriage between Jingbin Douglas and

Jerry Douglas was raised and actually litigated in the Seventh Circuit Probate Court proceedings

between Jingbin Douglas and Jed Douglas. (Docket No. 133-12 at 5.) The determination of that

issue was "necessary to the outcome" of the Seventh Circuit Probate Court proceedings, because

Jed Douglas specifically asserted that "[Jerry Douglas] was not validly married to Mrs. Douglas."

(*Id.*)[28] The Seventh Circuit Probate Court proceedings resulted in a final judgment on the merits

---

[28] To clarify any potential issue about whether the Seventh Circuit Probate Court proceedings constitute "prior proceedings," that litigation was commenced on September 11, 2020. (Docket No. 133-12 at 4.) This action was commenced on March 5, 2021. (Docket No. 1.)

of the issue of the validity of the marriage between Jingbin and Jerry Douglas. Jed Douglas had a "full and fair opportunity to litigate the issue" in the Seventh Circuit Probate Court proceeding.[29]

As Jerry's spouse, Jingbin is entitled to his pension plan death benefits as a matter of law under the plain language of the plan. Summary judgment should be entered in favor of Jingbin for Transamerica Pension Plan death benefits in the amount of $17,900.33 plus accrued interest.

### 2. 401(k) benefits

At the time of his death, Jerry Douglas had a death benefit under the Transamerica (401)(k) Retirement Savings Plan valued at $11,019.55. (Docket No. 16 at 3.)[30] His beneficiaries under the plan were designated as Jed 75% and Jingbin 25%. (*Id*.) The Transamerica 401(k) plan provides that a legally married spouse must be the sole beneficiary of any death benefits unless that spouse consents to the participant's choice of a different beneficiary. (Docket No. 16-2 at 25 and 29.) Jingbin Douglas did not sign a Spousal Consent form to designate any beneficiary of the

---

Further, the Seventh Circuit Probate Court Order Granting Jingbin Douglas' Motion for Summary Judgment (Docket No. 133-12) was entered on March 29, 2023 (*id*. at 17), prior to this report and recommendation.

[29] The Seventh Circuit Probate Court's Order makes clear that Jed was given a fair opportunity to respond to Jingbin's motion for summary judgment and was put on notice that a failure to respond would result in the motion being granted. (Docket No. 133-12 at 5-7.) This constitutes a full and fair opportunity to litigate. *See, e.g.*, *Leonard v. RDLG, LLC*, 529 B.R. 239, 248 (E.D. Tenn. 2015), *aff'd sub nom. In re Leonard*, 644 F. App'x 612 (6th Cir. 2016) (redetermination of issues is unwarranted absent some reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation). Further, it is clear, under Tennessee law and federal law, that judgment rendered upon a party's failure to respond does not obviate a full and fair opportunity to litigate. *See, e.g.*, *Lawhorn v. Wellford*, 168 S.W.2d 790, 792 (Tenn. 1943) (default judgment is conclusive as to all issues that are well pled and material to the decision); *In re O'Rourke*, 169 B.R. 383, 384 (M.D. Tenn. 1994) (same).

[30] The interpled amount was $11,292.21. (Docket No. 47.)

17

proceeds of the 401(k) plan other than herself. (Jingbin Douglas deposition (at p. 292), Docket No. 133-21 at 28).

As Jerry's spouse, and in the absence of her consent otherwise, Jingbin is entitled to the 401(k) plan death benefits as a matter of law under the plain language of the plan. Summary judgment should be entered in favor of Jingbin for Transamerica 401(k) Retirement Savings Plan death benefits valued in the amount of $11,292.21, plus accrued interest.

### 3. Life insurance benefits

At the time of his death, Jerry Douglas also maintained life insurance under the Transamerica Life Insurance Plan. (Docket No. 16 at 4.)  Jerry's death benefit under the Basic Life Insurance portion of the plan was $59,000 and the death benefit under the Supplement Life Insurance portion of the plan was $234,000.  (*Id*.)

The life insurance policy establishes the right of the participant to name his beneficiaries, and states that the benefits will be paid to the designated beneficiaries. *See* Transamerica Life Insurance Policy at p. 13 (Docket No. 16-3 at 13).  The policy states the following regarding designating a beneficiary:

> A Beneficiary is the person(s) named at the time the Eligible Employee enrolls in the Plan or as later changed by the Eligible Employee . . . The Eligible Employee may change his or her Beneficiary designation without the Beneficiary's consent by giving notice either electronically or in writing to the Transamerica Employee Service Center.

(*Id*.)

Jerry Douglas last changed his beneficiary designations under the life insurance policy on November 15, 2019.  (Docket No. 16 at 21.)[31]   Jerry designated his basic life insurance

---

[31] Jed admitted in requests for admissions that the last beneficiary designations "showed by Transamerica" were dated November 15, 2019.  (Docket No. 133-8 at 8.)

beneficiaries as: Jed 10%; Penny 10%; and Jingbin 80%. (Docket No. 133-9 at 1.) Jerry Douglas designated his supplemental life insurance beneficiaries as: Jed 5%; Penny 5%; Daniel 5%; and Jingbin 85%. (Id. at 2.) [32]

The undisputed evidence before the Court supports that Jerry Douglas was competent when he made these final beneficiary changes. (Jingbin Douglas deposition (at pp. 298-300), Docket No. 133-21 at 31-33; Docket No. 99-45, manually filed recording of Jerry Douglas of November 15, 2019 made by Transamerica; Daniel Douglas deposition (at p. 97), Docket No. 133-23 at 24; Jed Douglas deposition (at p. 131), Docket No. 133-25 at 9; Order of Davidson County Seventh Circuit Court Granting Summary Judgment (at pp. 7, 11, 13), Docket No. 133-12 at 9, 13, and 15). Based on this evidence, the Court finds that Jerry Douglas was competent when he made these designations.

Accordingly, Jingbin Douglas is entitled to summary judgment that Jerry Douglas' life is properly distributed as follows: (i) $59,000 in basic life to Jed 10%, to Penny 10%, and to Jingbin 80% and (ii) $234,000 in supplemental life to Jed 5%, to Penny 5%, to Daniel 5%, and to Jingbin 85%, with apportioned accrued interest to each. [33]

---

[32] Although the Court has already found that Jerry Douglas and Jingbin Douglas were legally married for purposes of this motion, their marital status is of no consequence regarding whether Jingbin is entitled to receive the basic life insurance and supplemental life insurance benefits as designated by Jerry. The plain language of the policy authorized Jerry, as the Eligible Employee, to name any beneficiary of his choosing. As discussed herein, the Court finds that Jerry competently made the final designations on November 15, 2019, as described.

[33] In her cross-claim, Jingbin initially asked the Court to find that Jed, Daniel, and Penny are not eligible beneficiaries under the life insurance policy. (Docket No. 65 at 17 ¶ h.) However, Jingbin later moved to strike that portion of her cross-claim (Docket No. 128), which the Court granted (Docket No. 136). Accordingly, there is no dispute that Jed, Daniel, and Penny are eligible beneficiaries under the life insurance policy.

### 4. Jed's cross-claims for abuse of power and intentional infliction of emotional distress

In his answer and cross-complaint, Jed also asserts claims for abuse of process and intentional infliction of emotional distress. (Docket No. 19 at 11-12.) Because Jed failed to respond to Jingbin's motion for summary judgment, including to present any evidence in support of his tort claims, he is not entitled to proceed to trial on the tort claims merely based on allegations of his cross-complaint. To the extent the tort claims are properly before the Court, and in the absence of any evidence to support the allegations of his cross-complaint, which Jed has failed to produce, Jingbin is entitled to summary judgment and dismissal of Jed's tort claims as a matter of law. *Banks v. Wolfe Cnty. Bd. of Educ.*, *supra*.[34]

### 5. Jed's cross-claim for partition[35]

In his answer and cross-complaint, Jed asserts that he is the co-owner of three pieces of real property and that, because the property cannot be equitably divided, he is entitled to partition.

---

[34] It is therefore unnecessary for the Court to address the merits of Jingbin's claims. The Court also notes that there may be some question of the Court's subject matter jurisdiction over Jed's tort claims. However, the Court declines to further analyze this issue, which was not raised by Jingbin, and which is unnecessary to address given Jed's lack of response to Jingbin's motion for summary judgment.

[35] The status of the parties' dispute over partition is not entirely clear from the instant filings. Nevertheless, the Court finds it necessary and appropriate to address this issue to fully resolve all issues in this case.

In its Memorandum Opinion (Docket No. 122), this Court concluded that Jed's claim for partition in this case was not precluded by the probate exception because of quitclaims deeds that were purportedly executed by Jerry prior to his death relinquishing ownership to Jingbin, which this Court found removed the properties from the custody of the probate court. (*Id*. at 13-14.) However, in the interim between the parties' filings that resulted in this Court's Memorandum Opinion (*see* Docket Nos. 34, 58 and 62), the last of which was filed on March 11, 2022, and the issuance of the Memorandum Opinion on March 27, 2023, Jed filed a *pro se* Petition Contesting Probate of Will, Quit Claims/Fraud Conveyance, Executorship, Marriage/Bigamy (Docket No. 135 at 5-12) in the Davidson County Probate Court in which he apparently raised the issue of ownership of the three properties. *See* Docket No. 133-12.

(Docket No. 19 at 11.)[36]  However, the Seventh Circuit Probate Court, in its Order of March 29, 2023, found and concluded that Jerry Douglas competently executed a will on May 13, 2015, in which he devised and bequeathed all real property to Jingbin Douglas, who was his lawful spouse. (Docket No. 133-12 at 7-15.)  The Seventh Circuit Probate Circuit further ordered that ownership of the three properties in which Jed claimed an interest passed pursuant to Jerry's valid will with right of survivorship and vested solely in the person of Jingbin Douglas. (*Id*. at 15.)[37]

Under principles of collateral estoppel, as discussed above, Jed is precluded from any further contest over the three subject properties. The "precise issue" of ownership of the three properties was raised and actually litigated in the Seventh Circuit Probate Court proceedings between Jingbin Douglas and Jed Douglas. (Docket No. 133-12 at 3.) ("In his prayer for relief, Jed asked the Court to set aside the Will and to grant fifty percent ownership of Mrs. Douglas' three homes to him.") The determination of that issue was "necessary to the outcome" of the Probate Court proceedings, because Jed Douglas specifically asserted that he was a fifty percent owner of the subject properties. (*Id*.) The Seventh Circuit Probate Court proceedings resulted in a final judgment on the merits of the issue of ownership of the properties. (*Id*. at 15.) Jed Douglas had a "full and fair opportunity to litigate the issue" in the Probate Court proceeding.

---

[36] The three properties are: 532 Elaine Avenue, Nashville, Tennessee; 622 Eastboro Drive, Nashville, Tennessee; and, 671 Westboro Drive, Nashville, Tennessee. (Docket No. 19-4.)

[37] Numbered paragraph 5 of the Seventh Circuit [Probate] Court's order, adjudication, and decree includes the specific referenced language. The extent to which the Probate Court considered the quitclaim deeds is unclear.  Certainly, Jed raised that issue in his *pro se* petition for relief from the Probate Court. (Docket No. 135 at 7 and 10.)  There is no specific mention of the quitclaim deeds in the Probate Court's March 29, 2023 Order. (Docket No. 133-12.)  Nor did either party seek to modify this Court's March 27, 2023 Memorandum Opinion and Order (Docket Nos. 122 and 123) based on the Probate Court's subsequent determination of ownership of the three properties.

However, even if collateral estoppel does not preclude further consideration by this Court of Jed's partition claim, including based on this Court's prior ruling regarding the partition claims, Rule 41(b) of the Federal Rules of Civil Procedure allows the Court to dismiss Jed's partition claim for "fail[ure] to prosecute or to comply with these rules or a court order[.]" Pursuant to Rule 41(b), the Court may dismiss an action upon a showing of a clear record of delay, contumacious conduct, or failure to prosecute by the plaintiff. *See Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 364 (6th Cir. 1999); *Bishop v. Cross*, 790 F.2d 38, 39 (6th Cir. 1986); *Patterson v. Township of Grand Blanc*, 760 F.2d 686, 688 (6th Cir. 1985) (per curiam).[38]

Courts generally consider four factors in determining whether dismissal under similar circumstances is appropriate: (1) whether the subject party's failure is due to willfulness, bad faith, or fault; (2) whether the opposing party was prejudiced by the dilatory conduct of the subject party; (3) whether the subject party was warned of possible dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 615 (6th Cir. 1998) (citing *Regional Refuse Sys., Inc. v. Inland Reclamation Co.,* 842 F.2d 150, 153-55 (6th Cir. 1988)). No single factor is dispositive, although the Sixth Circuit has held that a case is properly dismissed where there is a clear record of delay or contumacious conduct. *Knoll*, 176 F.3d at 363 (citing *Carter v. City of Memphis,* 636 F.2d 159, 161 (6th Cir. 1980)). Courts are additionally required to consider their limited resources as part of the analysis. *See In re McDonald*, 489 U.S. 180, 184 (1989) ("A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice.")

---

[38] Dismissals pursuant to Rule 41(b) may be directed by the Court in the absence of a defense motion. *Jourdan v. Jabe,* 951 F.2d 108, 109 (6th Cir. 1991).

The Court finds that the first factor of willfulness, bad faith, or fault weighs in favor of dismissal. That Jed has failed to fulfill his responsibilities as a litigant, the fault for which, in the absence of any other evidence, is attributable to him is apparent. This Court's order of March 28, 2023, expressly directed Jed to respond to any refiled motion for summary judgment (Docket No. 124 at 2), which he failed to do.

The resulting prejudice to Jingbin from Jed's dilatory conduct is that she may now be required to continue litigation over the potential issue of partition in this Court, even though there is a final order of the Seventh Circuit Probate Court that resolves the question of ownership of the subject properties. That issue is even further complicated by the essentially concurrent decision from two different courts with conflicting outcomes. Further, Rule 41 and Local Rule 41.01(a) also plainly permit dismissal under the circumstances of this case, namely, Jed's dilatory conduct, as does the Court's inherent authority to manage its own dockets. This second factor therefore also supports dismissal.

Jed was given an opportunity to avoid dismissal, albeit not as clearly as to the partition claims, by simply responding to Jingbin's motion for summary judgment and asserting his position that the partition claim remains for disposition by this Court, if that is, in fact, his position. Instead, Jed ignored that opportunity by failing to respond to Jingbin's motion for summary judgment at all, despite the Court's plain directive for him do so. (Docket No. 124.) Additionally, Jed has taken no other action to move this case forward except to improperly send a letter directly to the District Judge sometime in March of 2023. (Docket Nos. 134 and 135.) The District Judge issued an order on May 4, 2023, following receipt of Jed's letter, which put Jed on notice that requests for relief from or action by the Court can only be sought by appropriate motion. (Docket No. 134.) The District Judge's May 4 order also put Jed on notice that failure to comply with the order could

result in any of the sanctions authorized by Rule 16(f), which includes dismissal. Following the May 4 order, Jed also failed to otherwise seek relief from the Court, including as to any partition claim, despite the allowance of an opportunity in that order to do so. All these circumstances weight the third and fourth factors in favor of dismissal. Because Jed was given an opportunity to avoid dismissal and failed to do so, the Court cannot find that any less drastic remedy would produce a different result.[39]

Further, the Court has already expended significant judicial resources on this litigation. Any further expenditure of already limited judicial resources is unwarranted. For all these reasons, dismissal of Jed's partition claim is appropriate.

### III. RECOMMENDATIONS

Based on the forgoing, it is respectfully **RECOMMENDED** that Jingbin Douglas's motion for summary judgment (Docket Entry No. 130) be **GRANTED** and judgment entered as follows:

1.      Jingbin Douglas be awarded the death benefit under Jerry Douglas' Transamerica Pension Plan in the amount of $17,900.33 and the interpled funds plus accrued interest be distributed to her.

2.      Jingbin Douglas be awarded the death benefit under Jerry Douglas' and 401(k) retirement savings benefits in the amount of $11,292.21 and the interpled funds plus accrued interest be distributed to her.

3.      Benefits under Jerry Douglas' basic life insurance policy be awarded according to his last beneficiary designations and interpled funds distributed in the amount of $5,900 or ten percent (10%) each to Jerome E. ("Jed") Douglas, II and Penny Grace Judd and $47,200 or eighty

---

[39] Notice of this report and recommendation also provides Jed Douglas with an opportunity to respond to the recommended dismissal of his partition claim.

percent (80%) to Jingbin Douglas, with accrued interest apportioned as 10% to each of Jed Douglas and Penny Grace Judd and 80% to Jingbin Douglas.

4.     Benefits under Jerry Douglas' supplemental life insurance policy be awarded according to his last beneficiary designations in the amount of $11,700 or five percent (5%) each to Jed Douglas, Penny Grace Judd, and Daniel Douglas and $198,900 or eighty-five percent (85%) to Jingbin Douglas, with accrued interest apportioned as 5% to each of Jed Douglas, Penny Grace Judd, and Daniel Douglas and 85% to Jingbin Douglas.

5.     The cross-claims of Jed Douglas for abuse of process and intentional infliction of emotional distress be dismissed.

6.     The cross-claim of Jed Douglas for partition be dismissed.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made.  *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a).  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

The Clerk of Court is **DIRECTED** to send a copy of this Report and Recommendation to Defendant Jerome E. ("Jed") Douglas, II and to Defendant Daniel Douglas at their addresses of record in this case.

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge